IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**KATHRYN V.,**[1]

       Plaintiff,                             Civ. No. 6:18-cv-01240-CL

                      v.                            **ORDER**

**COMMISSIONER OF SOCIAL SECURITY,**

       Defendant.

_____

MARK D. CLARKE, Magistrate Judge.

      Plaintiff Kathryn V. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration pursuant to 42 U.S.C. 405(g) and 1383(c)(3), denying her

claim for benefits.  For the reasons below, the Commissioner's decision is REVERSED and

REMANDED for further proceedings.

---

[1]In the interest of privacy, this Order uses only the first name and the initial of the last name of
the non-governmental party or parties in this case.

## BACKGROUND[2]

Plaintiff is a forty-five-year-old woman with a long history of back pain, fibromyalgia, and morbid obesity. In February 2015, Plaintiff applied for Disability Insurance Benefits, alleging disability beginning July 1, 2014. Tr. 157-63.1 The agency denied the claim both initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 94-103, 108-09. She appeared for a hearing before ALJ Katherine Weatherly in May 2017. Tr. 31-69. On June 30, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. Tr. 12-27. Plaintiff requested review of the hearing decision, which the Appeals Council denied in May 2018. Tr. 151-53, 6-11. Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff seeks review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

---

[2] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 9.

§§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

  a.    The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1.  Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019.

2.  Plaintiff did not engage in substantial gainful activity from the alleged onset date of July 1, 2014.

3.  Plaintiff has the following severe impairments: lumbar degenerative disc disease; history of trochanteric bursitis; fibromyalgia; morbid obesity; and probable left knee arthritis.

4.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5.  Plaintiff has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations. The claimant can lift/carry less than 10 pounds frequently and 10 pounds occasionally. She can sit for six out of eight hours and stand/walk for two out of eight hours. She must have the opportunity to sit or stand at will while remaining on task. The claimant can frequently climb and occasionally stoop.

6. Plaintiff is unable to perform any past relevant work.

7. Plaintiff was born on December 3, 1974 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. Plaintiff has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because material to the determination of disability because using the Medical-Vocational Ruless as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

Consequently, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act. Tr. 36.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues:

1. Did the ALJ properly evaluate the opinions of Plaintiff's medical sources?

2. Did the ALJ properly evaluate Plaintiff's subjective pain testimony?

The Court finds that the ALJ erred in the first issue, but not in the second. The ALJ's decision should be reversed and remanded for reconsideration and reevaluation of the report by examining physician Dr. Puziss.

**I.       The ALJ did not give sufficient reasons to discount the opinion of Dr. Puziss, a medical expert.**

In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2008).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Id.* at 1202.  Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties.  *Id.*  However, an ALJ considers all relevant medical evidence and is responsible for resolving its conflicts. 20 C.F.R. §§ 404.1527, 416.927; *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1164 (9th Cir. 2008). Even where an examining physician's opinion is contradicted by another doctor, the ALJ may only reject it with "specific and legitimate" reasons supported by substantial evidence. *Id.* at 1164; *accord Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). Medical experts (ME) are considered experts in the Social Security disability programs, and their opinions may be entitled to great weight if they are supported by the record. *See* 20 C.F.R. §§ 404.1513(b), 404.1527.

In April 2017, Paul Puziss, MD, reviewed Plaintiff's medical file and performed a physical examination. Tr. 445-52. His file review was thorough and so was his exam.  Ultimately he determined Plaintiff suffered from lumbar degenerative disc disease, primarily L2-3; annular fissures, L3-4, L4-5, L5-S1; discogenic pain secondary to annular fissures; history of bilateral greater trochanteric bursitis, not demonstrable at the examination; fibromyalgia; morbid obesity,

worsening; and probable degenerative arthritis, lateral left compartment. Tr. 452. He opined that

Plaintiff's conditions would cause her to miss more than four workdays per month. Tr. 452. He

found her capable of sub-sedentary work at best and concluded, "Clearly, she cannot return to

her regular occupation or virtually any other occupation, at this time." Tr. 452-53. He assessed

that morbid obesity was a "significant factor that prevent[ed] her from getting realistic work and

need[ed] to be treated." Tr. 453. Her left lumbosacral facet syndrome also required treatment,

although there was "no guarantee that it [would] be treated successfully." Tr. 453.

In evaluating this opinion, the ALJ stated:

> I give little weight to this one-time examination of the claimant, as
> such an extreme opinion is inconsistent with Dr. Puziss's objective
> findings. Additionally, I give no weight to Dr. Puziss's
> recommendation that the claimant "should undergo a
> comprehensive psychological evaluation," as this is inconsistent
> with the claimant's treatment history documenting only mild anxiety
> and depression symptoms that improve with medication. (Ex. l 5F-
> 8).

Tr. 21. The ALJ did not identify which of Dr. Puziss's opinions she found to be "extreme," nor

did she identify which objective findings were inconsistent with the ultimate opinion. The ALJ

did not identify any directly contradictory medical opinions or evidence in the record other than

her mild anxiety and depression symptoms, which only apply to Dr. Puziss's recommendation

for a psychological evaluation, not to the other limitations.

The government's response brief outlines a number of potential reasons the ALJ could

have relied upon to discount Dr. Puziss's opinions, including the Plaintiff's activities, a possible

history of exaggerating symptoms, and the treatment record, in which various doctors expressed

what Plaintiff could do to alleviate her symptoms, but did not form opinions regarding her ability

to work. However, the ALJ herself did not give any of those reasons to reject or discount Dr.

Puziss's opinions. "While the court may make limited inferences from unclear or poorly stated

explanations, an ALJ's decision may not be upheld based on 'post hoc rationalizations that attempt to intuit what the ALJ might have been thinking.'" *Esser v. Colvin*, 2016 WL 5746353, at *3 (D. Or. Oct. 3, 2016) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009)); *see also Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 537 (1981) ("[P]ost hoc rationalizations of the agency or the parties to this litigation cannot serve as a sufficient predicate for agency action."); *Vista Hill Found., Inc. v. Heckler*, 767 F.2d 556, 559 (9th Cir. 1985) ("An agency's decision can be upheld only on a ground upon which it relied in reaching that decision."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (explaining that the Court is "constrained to review the reasons the ALJ asserts"); *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency.").

Dr. Puziss made specific findings and gave an expert medical opinion based on his review of the medical file and his own physical evaluation of Plaintiff. The ALJ failed to give specific and legitimate reasons to reject these findings and ultimate opinion. Based on a review of the record, the Court does not find that the opinion should be credited-as-true. As discussed below, the ALJ did properly evaluate Plaintiff's subjective symptom testimony. Therefore, this case should be reversed and remanded for further proceedings. On remand the ALJ shall properly evaluate the opinion of medical expert Dr. Puziss.

## II.    The ALJ properly evaluated Plaintiff's subjective complaints and substantial evidence supports the ALJ's analysis.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce

some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Reddick*, 157 F.3d at 724; *Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). The ALJ must also "state specifically which symptom testimony" is being rejected and what facts lead to that conclusion. *Smolen v. Charter*, 80 F.3d 1273, 1284 (9th Cir. 2009) (citing *Dodrill*, 12 F.3d at 918). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007)).

In this case, the ALJ applied the requisite two-step framework and cited specific, clear, and convincing reasons for discounting portions of Plaintiff's subjective symptom testimony. At the hearing, Plaintiff testified that she missed work due to back and hip pain when still working as a caregiver, and that she was ultimately forced to stop working due to her pain symptoms. Tr.

35-36. She did not currently have a doctor due to lack of insurance. Tr. 38. The only medication she could refill was Gabapentin. Tr. 38. She was not taking over-the-counter pain medications. Tr. 38. She could lift ten pounds. Tr. 38. She had difficulty sitting upright; she could walk for an hour-and-a-half maximum before she would be "done completely for the day." Tr. 39-40. She was able to do household chores only in short intervals and required frequent breaks to recline in her chair. Tr. 40. She spent about half of a typical eight-hour day in her recliner. Tr. 51. Her son helped with most of the household chores. Tr. 40. When the family moved in 2015, she was able to pack boxes for only twenty to thirty minutes at a time for a maximum of a couple hours per day. Tr. 43. She had difficulty exercising. Tr. 46. She was able to drive short distances but experienced pain with drives lasting longer than fifteen minutes. Tr. 54-55. She testified that she would not last more than two hours at a job that allowed her to sit and stand at will. Tr. 57. She did not handle stress well and rarely socialized with others outside of her family. Tr. 61.  The ALJ noted that she testified "that she is unable to perform 'even a sit-down job' because going into town and walking around caused her such pain that she had to go home and lie down. As such she testified that she is unable to even follow-through with obtaining a job." Tr. 21.

        In evaluating these symptoms, the ALJ determined that the medically determinable impairments could reasonably cause some of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms "are not entirely consistent with the medical evidence and other evidence in the record." Specifically, the ALJ found that the medical record does not support the functional limitations claimed by Plaintiff; that Plaintiff's admitted activities of daily living are inconsistent with her allegations; that the record indicates that conservative treatment improves her symptoms, but she does not always engage in such treatment; and that her symptoms flare when she engages in activities more

strenuous than the RFC, but she engages in them anyway.  Tr. 20. These are specific, clear and convincing reasons the ALJ determined that Plaintiff's subjective symptoms are not as significant as alleged.  Therefore, the ALJ's decision should be affirmed.

First, the ALJ determined that the medical record did not support the severity of Plaintiff's alleged limitations. Tr. 19.  Conflict between the alleged severity of a claimant's symptom testimony and the medical evidence of record is a valid basis for an ALJ to find the claimant's symptom testimony less than fully credible. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Here, MRI imaging of Plaintiff's lumbar spine in February 2015, August 2015, and April 2016 were generally mild, with only "some narrowing at L2-3" in the first scan, and only a "bit of worsening," with still mild findings in the subsequent imagining. Tr. 19. "Despite these mild findings… [Plaintiff] reported significant worsening of symptoms and treatment providers have pointed out that MRI imagining does not explain some of [her] reported symptoms. Exs. 5F-5; 13F-4)." Tr 19.  The ALJ also noted that Plaintiff's treatment providers, instead of recommending surgery, "repeatedly recommended 'the best thing for [her] to do would be to lose a significant amount of weight, quit smoking, and start exercising," thus indicating that Plaintiff's "sedentary lifestyle is self-imposed and not a medical necessity."  Tr. 20. Nevertheless, the ALJ concluded that the RFC would adequately accommodate Plaintiff's symptoms by "limiting her to a sedentary exertional level, by allowing her to sit or stand at will, and with the additional postural limitations." Tr. 20. This is a specific, clear, and convincing reason, supported by the evidence, to discount Plaintiff's subjective symptom testimony.

Second, the ALJ determined that Plaintiff's activities were inconsistent with her allegations of disability. Tr. 20. The Court agrees with Plaintiff that it is improper for an ALJ to reject disabling limitations based on a claimant's attempts at leading a normal life. "One does not

need to be utterly incapacitated or sit in bed all day in order to be disabled." *Vertigan v. Halter*,

260 F.3d 1044, 1049-50 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th

Cir.1989)). The Ninth Circuit has explained that:

> The critical differences between activities of daily living and
> activities in a fulltime job are that a person has more flexibility in
> scheduling the former than the latter, can get help from other persons
> . . ., and is not held to a minimum standard of performance, as she
> would be by an employer. The failure to recognize these differences
> is a recurrent, and deplorable, feature of opinions by administrative
> law judges in social security disability cases.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting *Bjornson v. Astrue*, 671

F.3d 640, 647 (7th Cir. 2012)). However, it is also true that the Ninth Circuit has upheld the

evaluation of a Plaintiff's daily activities to discredit subjective symptoms to the extent that they

contradict claims of a totally disabling impairment. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th

Cir. 2012) ("Even where those activities suggest some difficulty functioning, they may be

grounds for discrediting the claimant's testimony to the extent that they contradict claims of a

totally debilitating impairment").

Here, the ALJ determined that:

> [Plaintiff's] functioning has been greater than alleged and the record
> contains some examples of activities that are inconsistent with
> allegations of disability. …Upon discharge from physical therapy in
> November 2015 she was "ambulating with minimal impairment,"
> demonstrating full strength, and "doing well with symptom
> management." (Ex. 9F-1). At that time, she reported she was
> independently completing activities of daily living and could walk
> for one hour around a grocery store with minimal increase of
> symptoms and she is able to manage these symptoms afterwards."
> (9F-1). This activity is consistent with the above residual functional
> capacity. Other records document that [she] has continued to
> demonstrate full motor strength in her lower extremities. (Ex. 5F-
> 10). Additionally, she acknowledged at hearing that she can lift up
> to 10 pounds, which is consistent with the above residual functional
> capacity.

Tr. 20. The ALJ was entitled to consider these activities and determine that they are inconsistent with the alleged severity of Plaintiff's symptoms and limitations, particularly her allegation that even a sedentary job that allowed her to sit or stand at will would be impossible for her.

Third, the ALJ noted that the record indicates that conservative treatment improves Plaintiff's symptoms, but she does not always engage in such treatment. Failure to seek more aggressive or alternative treatment plans and failure to follow prescribed treatment that might improve symptoms is a sufficient reason to discount the severity of an individual's pain or other disabling symptoms. *See* SSR 16-3p, available at 2017 WL 5180304, at \*9; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here the ALJ properly considered that, while Plaintiff had no access to prescription pain medication due to a loss of insurance, she could have been treating her pain with over-the-counter pain medications, but she chose not to do so. The ALJ determined this to be "inconsistent with allegations of debilitating functional loss and pain," and the Court finds no error in that reasoning.

Finally, the ALJ found that the record shows that Plaintiff's symptoms do flare up when she engages in activities beyond the limitations set forth in the above residual functional capacity and that these symptoms typically resolve. Plaintiff "went hunting with her kids in November 2014," and moved boxes in February 2015, and experienced a flare-up of exacerbated pain both times. In September 2015 she reported that "she was primarily concerned about her neck pain, which was intermittent and worsening with turning her head and lifting heavy objects." Tr. 20. The ALJ noted that by April 2016 she reported her symptoms had improved. Tr. 20. The ALJ concluded that "these records not only suggest that the claimant is willing to engage in activities despite her symptoms, but also show that she engages in activities that are more strenuous than

the residual functional capacity. The Court finds this to be an appropriate reason to discount the severity of Plaintiff's alleged limitations.

The ALJ properly evaluated Plaintiff's subjective symptom testimony and her decision is supported by substantial evidence.

## ORDER

Based on the foregoing, the decision of the Commissioner is REVERSED and REMANDED for further proceedings. On remand the ALJ shall properly consider and weigh the opinion of examining medical expert Dr. Puziss.

It is so ORDERED and DATED this 23rd day of April, 2020.

_____/s/ Mark D. Clarke_____
MARK D. CLARKE
United States Magistrate Judge